GLOYD (McCLEOD v.). See Case No. 8 697.

GLYN, In re. See Case No. 6,322.

GLYN (POLAND v.). See Case No. 11,243.

GOBBOLD (LANE v.). See Case No. 8,051.

## Case No. 5,488a.

### GOBLE v. DELAWARE, L. & W. R. CO.

[3 N. J. Law J. 176.]

District Court, D. New Jersey. April Term, 1880.

CARRIERS OF PASSENGERS—RAILROAD COMPANIES—NEGLIGENCE—PERSONAL INJURIES—DAMAGES.

[1. Railroad companies carrying passengers by the powerful and dangerous agency of steam

are held to the greatest possible care and diligence to carry them safely, and are responsible for the direct consequences of any negligence or want of care or skill on the part of an employee.]

[2. The fact that an injury results from a railroad collision without any fault of the passenger is prima facie evidence of carelessness, negligence, or want of skill on the part of the company, and the burden is upon it to prove that the accident was not occasioned by the fault of its agents.]

[3. The company is responsible for the safety of passengers in any place which it provides for their accommodation, and the fact that a passenger chooses to ride in the smoking car, next to the locomotive, which is perhaps not the safest place in the train, is not contributory negligence.]

[4. The elements of damage in case of injury to a passenger are: (1) The bodily injury; (2) the pain undergone; (3) the effect on health, according to degree and probable duration; (4) the expense incidental to attempts to cure or lessen the injury; (5) the pecuniary loss sustained by inability, whether temporary or permanent, to attend to business.]

This action was brought [against the Delaware, Lackawanna & Western Railroad Company] to recover damages for injuries sustained by the plaintiff by reason of a collision on the defendant's road. The plaintiff was a dentist by profession, residing near Madison, N. J. On the evening of January 8, 1879, he entered the defendant's cars at Hoboken, on an express train, to go to Madison. He appeared to be in the enjoyment of ordinary health. There was no evidence that he was then, or had been for some months previously, suffering from any special physical infirmity. Just before reaching the Summit station the two rear cars were as usual uncoupled from the main train with the design of attaching them to another locomotive, to proceed upon the West Line road. The plaintiff was sitting in the car next to the engine, which was divided into two compartments, the first being used for baggage and the rear part as a smoking car. The plaintiff occupied the second or third seat from the forward end of the smoking car, with his back to the locomotive, engaged in a game of whist with some friends. While thus seated the main train stopped and the two cars which had been detached came into contact with the rear end of the last car of the train with sufficient force to attract general attention, to upset one if not two water coolers, and to cause some degree of disturbance among the passengers. The plaintiff at the moment of the concussion was sitting in his seat. He had just straightened himself up to draw his overcoat around him when he was thrown violently first forward and then backward with such force as to cause him to bite in two a segar that was in his mouth. His first sensation was a pain in the stomach which produced nausea, dizziness and general uneasiness. He walked home with some difficulty, went to bed and sent for his physician. After a few days he got up

and attempted to resume his business, but was unable to do so, and soon after was prostrated, from injuries to the spinal cord. He is paralyzed and altogether incapacitated from any mental or physical labor. The plaintiff is a dentist and testified that his income was $5,000 a year.

Wm. T. Hoffman and A. Q. Keasbey, for plaintiff.

Moses Taylor Pine, Mr. Odell, Wm. L. Dayton, and J. D. Bedle, for defendants.

NIXON, District Judge (charging jury). The action is to recover damages for injuries which the plaintiff alleges he has sustained from the negligence of the agents of the defendant corporation. Railway companies in the transportation of their passengers do not insure their lives; but they do undertake to use the greatest skill and diligence in carrying them safely, and are responsible for the direct consequences of any negligence or want of care or skill on the part of an employee. The supreme court of the United States, nearly thirty years ago, announced their view of the responsibility of railroad corporations in cases of this kind. The judges all concurred in saying that when carriers undertake to convey persons by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence, and whether the consideration of such transportation be pecuniary or otherwise, the present safety of the passenger should not be left to the sport of chance or the negligence of careless agents. Any negligence in such cases may well deserve the epithet of "gross." This language has been approved and reaffirmed in several cases since, and there has been no disposition shown to relax the strict rule of accountability therein announced. But although they are held to the greatest possible care and diligence, they are not liable, even when chargeable with negligence, if it appear that the accident arose from the want of ordinary and reasonable care on the part of the plaintiff, in consequence of which he contributed to the injury by his own fault. There is also, gentlemen, another principle of law to be carried in your mind in determining a suit for personal injuries received. It is this: Where it appears that the injury complained of was the result of a collision without the fault of the complaining party, that fact is prima facie evidence that there was carelessness or negligence or want of skill on the part of the company, and there is upon them the burden of proving that the accident was not occasioned by the fault of their agents.

Now, after these somewhat general observations, let me remark that the case involves the consideration by the jury, in the first place, of two questions. First, was the injury of the plaintiff caused by the negli-

gence or the lack of carefulness and skill on the part of the defendant? Secondly, did the plaintiff contribute to the injury by any fault or carelessness on his part? Now, if the first of these questions is answered in the affirmative and the second in the negative, the only remaining inquiry is, what amount of damages under the circumstances, as shown in the evidence, should be awarded? * * * If you come to the conclusion, gentlemen, that the injury to the plaintiff sprang from the collision of the cars, your next inquiry will be whether it was brought about by the negligence of the defendant company.

Now, what is negligence? It is easy, of course, to say in a general way, it is an omission of duty; it is a violation of the obligation which enjoins care and caution in what we do. It ordinarily excludes design, and hence a man, however honest he may be, cannot excuse himself from the consequences of not doing what he ought to have done by saying, "Why, I did not act because I did not think there was danger." It is his duty to think, and if he fails to use the efforts or take the precaution which an ordinarily prudent man would employ in like circumstances, he is guilty of negligence. Upon the question of contributory negligence, the judge said: "It may be suggested and has been suggested that as the forward smoking car was not the safest place in the train, the plaintiff must take the consequences of being there." But that is not the law. The railway company is responsible for the safety of its passengers in any place which they have provided for their transportation. If a passenger takes the risk of a ride upon the engine and gets hurt, it is his fault and not the fault of the company, as they have not agreed to carry passengers safely upon the engine. But a smoking car is intended for passengers where they can indulge their tastes and appetite without offending the olfactory nerves of their more fastidious (shall I say "more cleanly"?) fellow passengers. You thus come to the last and probably most difficult inquiry: What amount of damages shall be awarded? I can give you no help except to aid you with a few suggestions. In the first place, this is no case for vindictive or exemplary damages, for there is no pretense that there was any willful neglect. The plaintiff is only entitled to what the law calls "compensatory damages." I do not mean by this that you must try to make the plaintiff whole, or put him in as good condition as he was before the accident. In the very nature of the case that is impossible. No amount of money, gentlemen, can compensate for loss of health or physical suffering. But then you can do something, and my duty is to tell you what the elements of damages are which you ought to consider in making up your verdict. This is a difficult thing to do, and I know of no rule which I can lay down which is applicable to every case. During the progress of the case my attention has been called to a recent case in the English high court of justice (Phillips v. Southwestern Ry. Co. [4 Q. B. Div. 406]), in which elements of damages which the jury ought to consider are so clearly laid down by Chief Justice Cockburn that I am quite willing to adopt them in charging you. He says in his opinion that the elements of damages are: First. The bodily injury sustained. Secondly. The pain undergone. Thirdly. The effect on the health of the sufferer according to its degree and its probable duration, as likely to be temporary or permanent. Fourthly. The expense incidental to attempts to cure or to lessen the amount of injury. Fifthly. The pecuniary loss sustained through inability to attend to a profession or business, which again may be of a temporary character or may be such as to incapacitate the party for the remainder of his life. I have not seen lately, as it seems to me, a more clear, succinct and excellent rule upon the subject of damages than is thus laid down in this recent opinion of one of the highest courts of Great Britain.

The jury rendered a verdict for the plaintiff for $12,000.